[Cite as *Kingston of Miamisburg, L.L.C. v. Jeffery*, 2021-Ohio-4105.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| KINGSTON OF MIAMISBURG LLC | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29021 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-4781 |
| | : | |
| AMY JEFFERY, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of November, 2021.

. . . . . . . . . .

DAVID S. BROWN, Atty. Reg. No. 0082233 and W. CORY PHILLIPS, Atty. Reg. No. 0082489, 30100 Chagrin Boulevard, Suite 350, Cleveland, Ohio 44124
    Attorneys for Plaintiff-Appellant

KEVIN A. BOWMAN, Atty. Reg. No. 0068223, 130 West Second Street, Suite 900, Dayton, Ohio 45402
    Attorney for Defendant-Appellee, Fredric Smith

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Plaintiff-appellant Kingston of Miamisburg, LLC ("Kingston") appeals from a judgment rendered against it on its claims for fraudulent transfer and a constructive trust. Because we conclude there was competent, credible evidence to support the decision of the trial court, we affirm.

## I.     Facts and Procedural Background

{¶ 2} Kingston is the operator of a long-term care facility located in Miamisburg, Ohio.   On August 10, 2017, Marian Smith was admitted to the Kingston facility.   Marian died on September 30, 2017.   At the time of her death, Marian's unpaid bill for the cost of her care while in the Kingston facility was $15,598.46.

{¶ 3} On October 13, 2017, Kingston filed this action against Marian's son, defendant-appellee Fredric Smith, and others not relevant to this appeal.[1] The complaint alleged that Marian had acted in violation of R.C. 1336.04 and R.C. 1336.05 because she had fraudulently transferred an investment account to Fredric.   Specifically, in 2013, Marian executed a transfer-on-death (TOD) beneficiary form designating Fredric as the beneficiary of the account.   Kingston claimed it was entitled to the creation of a constructive trust and payment from that account.[2]

---

[1] At the time this suit was filed, no action had been initiated in the probate court regarding Marian's estate.   Indeed, no probate court case was opened until March 6, 2018, when Kingston's attorney filed an application in the Montgomery County Probate Court seeking to be named special administrator for Marian's estate.

[2] For a more detailed account of the facts and events leading to this lawsuit, see our opinion rendered in Kingston's prior appeal.   *Kingston of Miamisburg, LLC v. Jeffery*, 2d Dist. Montgomery No. 28087, 2019-Ohio-1905.

**{¶ 4}** The parties filed motions for summary judgment, and the trial court rendered judgment in favor of Fredric.   In August 2018, Kingston filed an appeal, arguing that the trial court erred by denying its claim for an equitable constructive trust and by failing to consider whether the transfer of the asset was a fraudulent transfer as defined in R.C. 1336.05(A).   We sustained Kingston's assignments of error and reversed the judgment of the trial court.   We remanded the matter for consideration of whether Kingston could maintain an action for fraudulent transfer under the provisions of R.C. 1336.05(A), and if so, whether a constructive trust was an appropriate remedy.   *Id.*   Our opinion was rendered on May 17, 2019.

**{¶ 5}** Following our remand, the parties again filed motions for summary judgment which were overruled by the trial court on September 19, 2019.   On October 9, 2019, Kingston filed a motion seeking a stay of the proceedings pending the resolution of the estate in probate court.   The trial court overruled the motion for a stay.   A bench trial was conducted on November 1, 2019.   At the conclusion of the trial, the court took the matter under advisement.   However, on November 4, 2019, the trial court entered an order staying the proceedings pending the outcome of the probate court case.

**{¶ 6}** Status conferences were conducted on May 27, August 27 and December 1, 2020.   On December 1, 2020, the trial court entered an order lifting the stay and setting a date for the announcement of the bench trial verdict.   The trial court announced its verdict in favor of Fredric in open court on December 18, 2020.   On December 21, 2020, Kingston filed a notice that an inventory had been filed in the probate case; a copy of the inventory was attached to the notice.   The inventory, which had been filed on August 28, 2020, indicated that Marian's estate had assets worth $10,150.   Kingston also filed a

Civ.R. 52 motion for findings of fact and conclusions of law. Fredric filed a motion to strike the inventory on the bases that it was not properly before the trial court and was not authenticated; the motion to strike was sustained by the trial court. The trial court filed its findings of fact and conclusions of law on January 19, 2021.

{¶ 7} Kingston appeals.

## II. Termination of Stay

{¶ 8} The first assignment of error asserted by Kingston states:

THE TRIAL COURT ERRED IN DISREGARDING ITS NOVEMBER 4, 2019, ENTRY STAYING MATTER PENDING PROBATE COURT PROCEEDINGS, AND RENDERING JUDGMENT WITHOUT CONSIDERING THE OUTCOME OF THE PROBATE COURT PROCEEDINGS.

{¶ 9} Kingston contends the trial court erred by lifting its stay of the proceedings.

{¶ 10} "It is well established that a trial court has supervisory control over its own docket." *Brown v. Bowers*, 1st Dist. Hamilton No. C-070797, 2008-Ohio-4114, ¶ 13, citing *State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 537, 45 N.E.2d 763 (1942). Indeed, "trial courts are given great deference in controlling their dockets, and therefore, a reviewing court uses an abuse-of-discretion standard when reviewing a trial court's efforts in this area." *Readnower v. Readnower*, 162 Ohio App.3d 347, 2005-Ohio-3661, 833 N.E.2d 752, ¶ 10 (2d Dist.), citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). An abuse of discretion occurs where a trial court exhibits an attitude that is "unreasonable, arbitrary or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5

Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 11} As stated above, this action was instituted in October 2017.   Our opinion in Kingston's first appeal was rendered in May 2019.   The trial of the issues remanded to the trial court was conducted on November 1, 2019.   The trial court then stayed the matter pending resolution of the probate case.   On December 1, 2020, the trial court lifted the stay, and it issued its verdict on December 18, 2020.   Thereafter, Kingston attempted to submit a copy of the estate inventory, as discussed above.

{¶ 12} This action was initiated slightly more than three years prior to the announcement of the trial court's judgment following remand.   In fact, the matter had been pending on remand for approximately 19 months prior to the entry of the judgment. The court stayed the proceedings for 13 of those 19 months in order to permit resolution of the probate case.   Kingston did not file an objection to the trial court's decision to lift its stay and announce the verdict, and there is no indication that Kingston provided the trial court with any information indicating that the probate court case was drawing to a close.   Indeed, in its appellate brief, Kingston admits that as of April 20, 2021, the date the brief was filed, the probate case was ongoing.

{¶ 13} Kingston does not cite, nor can we find, any authority for Kingston's claim that the trial court was obligated to continue to stay this proceeding indefinitely, especially since there was no indication regarding the amount of time needed for resolution of the probate case.   At the time the trial court rendered its verdict, it had heard testimony regarding the issues before it and was able to determine those issues on the merits based upon that testimony.   Additionally, the parties and their attorneys were in court on December 18, 2020, when the court entered its verdict on the record.   Even at that point,

there is no indication in the record that Kingston informed the court that an inventory had been completed in the probate case.   And, as stated above, it appears the probate case had not been concluded as of the time Kingston filed its appellate brief.

{¶ 14} Based upon this record, we cannot say the trial court abused its discretion in lifting the stay.   The first assignment of error is overruled.


### III.    Manifest Weight Analysis

{¶ 15} Kingston's second assignment of error states:

THE TRIAL COURT ERRED BY FINDING THAT DECEDENT MARIAN SMITH'S ESTATE WAS WORTH MORE THAN $25,598.46 AT HER PASSING IN 2017.

{¶ 16} Kingston claims that the trial court's decision was not supported by the evidence.

{¶ 17} When a judgment in a civil case "is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' "   *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).   "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the [judgment].' "   *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 18} The issue before the trial court on remand involved the question of whether Kingston had presented evidence sufficient to prove its claim of fraudulent transfer as defined in R.C. 1336.05(A). That statute provides:

A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

{¶ 19} R.C. 1336.02, which provides the definition of insolvency for purposes of the Fraudulent Transfer Act, states:

(A)(1) A debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation.

(2) A debtor who generally is not paying his debts as they become due is presumed to be insolvent.[3]

{¶ 20} Further, for purposes of determining insolvency, the statute provides that " '[a]ssets' do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors, or that has been transferred in a manner

---

[3] It was undisputed that only one payment of $1,000 was made to Kingston during the time Marian resided there. It was also undisputed that Marian was not capable of making decisions and that her granddaughter, Amy Jeffery, was attempting to gain guardianship over Marian in order to handle her affairs. However, Marian died before Amy could be appointed guardian. Given this state of affairs, we cannot say the definition of insolvency in R.C. 1336.02(C)(2) applied because, at the time the Kingston bill was accruing, Marian was incapable of making payments due to her incapacity, rather than due to any showing of a lack of assets.

making the transfer fraudulent under section 1336.04 or 1336.05 of the Revised Code." R.C. 1336.02(C)(1).

{¶ 21} Fredric testified that, at the time of her death, Marian owned four rings, a necklace, a bracelet and various other jewelry valued at approximately $30,000. Specifically, he testified that she had two diamond rings valued at $8,000 and $4,500. He also testified that she owned a diamond necklace valued at $7,500 and a bracelet valued at $3,500. Fredric testified that Marian also owned an African opal with a value of $3,500. Fredric, who testified that he had worked as a jewelry and gem appraiser, also testified that he had helped his mother acquire her jewelry collection. According to Fredric, Marian's jewelry box was removed from her home shortly after her death by her three granddaughters. One of those granddaughters, Amy Jeffery, also testified at trial, indicating she had some of Marian's rings in her home and that other property belonging to Marian was being held in storage by one of the other granddaughters. It was established that Marian owned furniture, china, and a car at the time of her death. The trial court expressly stated that it found the testimony of Amy Jeffery and Fredric to be credible.

{¶ 22} Fredric testified that the only claim presented to the estate was Kingston's bill. He testified that, as of the date of the trial, the estate had no assets other than a 2002 Buick Century vehicle. Fredric candidly admitted that he never sought to find any assets, other than the TOD account, until more than a year after Marian's death. He also admitted it was possible there were other assets which could be recovered.

{¶ 23} Based upon the evidence presented at trial, the trial court found that Kingston had failed to establish the elements of R.C. 1336.05(A) because it had failed to

prove that Marian and/or Marian's estate was rendered insolvent due to the transfer of the TOD account to Fredric. This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 24} Kingston now argues that the inventory established that the estate was valued at a little more than $10,000, which essentially rendered it insolvent, because it did not have enough monies to pay the Kingston bill. However, as stated above, the inventory was not certified or otherwise authenticated and was not properly before the trial court. Further, the evidence presented at trial suggested there was property, other than that presented on the inventory, which might have been available for liquidation. The mere fact that persons other than Fredric may have taken custody of that property did not compel a finding that Marian had been insolvent either at the time she designated Fredric as beneficiary of the TOD account or at the time of her death.

{¶ 25} Based upon the record before us, Kingston has failed to demonstrate that the trial court erred. Accordingly, the second assignment of error is overruled.

## IV. Constructive Trust

{¶ 26} The third assignment of error asserted by Kingston states:

THE TRIAL COURT ERRED BY FINDING THAT THE FUNDS WERE FREDRIC'S, AND SUMMARILY DISMISSING APPELLANT'S CAUSE OF ACTION FOR A CONSTRUCTIVE TRUST.

{¶ 27} Kingston argues that the trial court's decision dismissing its claim for a

constructive trust was erroneous because Kingston had established the elements of a fraudulent transfer under R.C. 1336.05(A), for which a constructive trust was an appropriate remedy. Given our disposition of the second assignment of error, this argument is moot.

{¶ 28} The third assignment of error is overruled as moot.

{¶ 29} We note that Fredric's brief includes a "cross-assignment of error" in addition to his responses to Kingston's arguments. Our resolution of Kingston's assignments of error makes any consideration of Fredric's "cross-assignment of error" moot. However, we also note that Fredric did not file a notice of appeal, and therefore he may not assert assignments of error in this matter.       .

## V.    Conclusion

{¶ 30} All of Kingston's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

HALL, J., concurs in judgment only.


Copies sent to:

David S. Brown
W. Cory Phillips
Kevin A. Bowman
Elizabeth E.W. Weinewuth
John E. Sharts
Hon. Timothy N. O'Connell